No. 13-1398

_____

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____


BRYAN CRAIG,
Plaintiff-Appellant

v.

RICH TOWNSHIP HIGH DISTRICT, et. Al.

Defendants-Appellees


_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
Case No. 1:12-cv-07581
The Honorable Elaine E. Bucklo, District Judge
_____


_____

BRIEF AND REQUIRED SHORT APPENDIX OF
PLAINTIFF- APPELLANT,
BRYAN CRAIG

_____


Stephen L. Richards
Attorney for the
Plaintiff-Appellant,
Bryan Craig

651 W. Washington Suite 205
Chicago, IL 60661
773-817-6927

RULE 26.1 DISCLOSURE STATEMENT OF STEPHEN L. RICHARDS

1.                          Party represented:     Bryan Craig

2.                     Attorneys who have appeared for this party:

                                              Stephen L. Richards

3.                          Corporation:          Party is not a corporation

                            Date:   April 23, 2013

                            /s/ Stephen L. Richards

                            Stephen L. Richards
                            651 W. Washington Suite 205
                            Chicago IL 60661

                            Tel:    773-817-6927
                            Fax:    773-634-8107
                            e-mail:       sricha5461@aol.com

                            Counsel of record pursuant to Circuit Rule 3(d)

# TABLE OF CONTENTS

DISCLOSURE STATEMENT…………………………………………………………..ii

TABLE OF CONTENTS…………………………………………………………………iii

TABLE OF AUTHORITIES……………………………………………………………iv

JURISDICTION………………………………………………………………………..1

ISSUE PRESENTED FOR REVIEW……………………………………...……...2

STATEMENT OF THE CASE………………………………………………………2

STATEMENT OF FACTS……………………………………..………………………..3

SUMMARY OF ARGUMENT………………………………………………………8

ARGUMENT…………………………………………………………………………9

I:      THE DISTRICT COURT ERRED BY FINDING THAT BRYAN CRAIG, A
        PUBLIC EMPLOYEE, HAD NO FIRST AMENDMENT RIGHT TO
        PUBLISH A BOOK ON A MATTER OF PUBLIC CONCERN WHICH WAS
        UNRELATED TO HIS EMPLOYMENT……………………………………9


CONCLUSION…………………………………………………………………….…19


CERTIFICATE OF TYPE VOLUME…………………………...………………………20


REQUIRED SHORT APPENDIX…………………………………………………21

## TABLE OF AUTHORITIES

Fed. R. Civ. P. 8(a)(2)……………………………………………………………………..9

Fed.R.Civ.P. 12(b)(6)……………………………………………………………......…9, 10

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1973 (2009)…………..…………………..9

*Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010)……………….…………..9, 10

*Connick v. Myers*, 461 U.S. 138, 147-48, 103 S.Ct. 1684 (1983)……………...11, 12, 19

*City of San Diego, Cal. v. Roe*, 543 U.S. 77, 125 S.Ct. 521 (2004)…………...……18, 19

*Crawford–El v. Britton*, 523 U.S. 574, 592, 118 S.Ct. 1584,
140 L.Ed.2d 759 (1998)………………………………………………………......…10

*Dishnow v. School Dist. of Rib Lake*, 77 F.3d 194, 197 (7th Cir. 1996)………………17

*Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S.Ct. 1951,
164 L.Ed.2d 689 (2006)………………………………………………………...….……10

*Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)………………………..9

*Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 413, 99 S.Ct. 693,
58 L.Ed.2d 619 (1979)……………………………………………………………16

*Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006)…….10

*Kokkinis v. Ivkovich*, 185 F.3d 840, 843 (7th Cir. 1999)…………………………..11, 16

*Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 282, 97 S.Ct. 568, 50 L.Ed.2d
471 (1977)………………………………………………………………………...….16

Navab-Safavi v. Broadcasting Bd. of Governors, 650 F. Supp. 2d 40,
55 -56 (D.D.C. 2009)……………………………………………………………..17

*New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721,
11 L.Ed.2d 686 (1964)………………………………………………………….13

*Olson v. Wexford Clearing Servs. Corp.*, 397 F.3d 488, 490 (7th Cir. 2005)…………..9

*Opp v. Office of State's Attorney of Cook County*, 630 F.3d 616, 619
(7th Cir. 2010)…………………………………………………………………...9

*Perry v. Sindermann*, 408 U.S. 593, 595, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)……..16

*Pickering v. Bd. of Educ. of Twp. High Sch. Dist*. 205,
391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)……….…...10, 12, 15, 16, 18, 19

*Rankin v. McPherson*, 483 U.S. 378, 387, 107 S.Ct. 2891, 2898 - 99 (1987)…………13

*U.S. v. Lewis*; 411 F.3d 838, 841-42 (7th Cir. 2005)………………………………...…..9

*U.S. v. National Treasury Employees Union*, 513 U.S. 454, 457,
115 S.Ct. 1003, 1008 (1995)…………………………………………………13, 14, 15

## JURISDICTION

This proceeding was commenced as a complaint for violation of plaintiff's first amendment civil rights under  42 U.S.C. Sec. 1983. (A-14). The District Court had jurisdiction over this proceeding pursuant to 28 U.S.C. Secs. 1331, 1343, and 1367.   The judgment was docketed with the Clerk of the Court on February 19, 2013 (A-1) and amended by a text entry on March 11, 2013. (A-2). Appellant's notice of appeal was filed on February 22, 2013. The court dismissed the appeal for failure to timely pay the required docketing fee on March 22, 2013, but reinstated the appeal on appellant's motion on May 26, 2013. The court set April 24, 2013 as the due date for appellant's brief and required short appendix.   One extension was granted and the brief is currently due on May 15, 2013. Appellate jurisdiction is conferred upon the United States Seventh Circuit Court of Appeals pursuant to 28 U.S.C. §1291, 28 U.S.C. §1294(1) and Federal Rules of Appellate Procedure, 4(a).

## ISSUE   PRESENTED FOR REVIEW

Whether the trial court erred by granting defendants' 12(b)(6) motion to dismiss.

## STATEMENT OF THE CASE

Plaintiff, Bryan Craig   filed a one count complaint against defendants, the Board of Education of Rich Township High School, District 227 and various board members. (A-14-19).   In Count I, plaintiff alleged that the defendants violated Bryan Craig's first amendment rights under 42 U.S.C. Sec. 1983 by dismissing him from his position as a tenured guidance counselor in retaliation for his publication of a self-help book entitled "It's Her Fault." (A-15, 17).   Defendants moved to dismiss the complaint for failure to state a claim. (A-20-46). Plaintiff responded, and attached copies of "It's Her Fault," as well as the Charges and Bill of Particulars filed against him. (A-47-91). Defendants filed a reply. (A-92-106). On February 19, 2013, the district court, Bucklo, J., granted the motion to dismiss the complaint.   (A-3-12).

**STATEMENT OF FACTS**

The pertinent facts alleged in the complaint are as follows: Plaintiff Bryan Craig was employed as a tenured guidance counselor by defendants Rich Township High School, District 227 and the Board of Education of Rich Township High School, District 227. (A-15). On July 28, 2012, Bryan Craig self-published a self-help book entitled "It's Her Fault." (A-15). The book included an "Editor's Note," written by a teacher at Rich Township High School, District 27, Kylie Gregor. (A-15-16). The book, which is addressed mainly towards women, claims to provide women with a "roadmap to having the upper hand in a relationship with a man." (A-16). The complaint alleged that plaintiff's speech, as contained in "It's Her Fault" was on a matter of public concern, relationships between adult men and women. (A-17).

The complete text of "It's Her Fault" was appended to plaintiff's response to the defendant's motion to dismiss. (A-61-80). The district court considered the content of the book in ruling on whether to grant the motion to dismiss. (A-9-11).

The book is dedicated to a "few women in my life who have consciously and unconsciously molded me into a trained clinician beyond my academic background." (A-62). The dedication names these women as his mother, Peggy who showed him that "women are genetically built to take on tons all by themselves," his "big sis," Jan, who taught him to treat "ladies as women, not girls," to his "great friend," Qiana, to his "bff," KY, and to his "twin," "rock," and "wife," Red, who has "elevated" his "soul."

The book also contains a dedication to plaintiff's "students and clients" who "consistently reach out to me during rough times in the world of relationships; Keep listening and learning."   (A-62).

The only other reference in the book to plaintiff's job as an employment counselor occurs on the first page of the book where plaintiff begins by stating that "I have spent most of my life as many men do…surrounded by women." (A-64). Without naming the school where he works, he mentions that "he coaches girls basketball, and that he works in an students a year, about half of whom are females. Suffice it to say, I have spent a considerable amount of time around, and with, the fairer sex." He then details his academic qualifications and credentials, including his experience as a mental health counselor at Mount Sinai hospital , counselor at Centers for New Horizons, and in-home counselor for the Department of Children and Family Services. (A-64). The book contains no other reference to his employment as a guidance counselor.

Chapter One of the Book, entitled "Current Issues," states the theme of the book: "Whether we like it or not, we live in a society of marital discomfort and inadequate relationship practices. In many cases, men and women begin relationships for the wrong reasons." (A-66). The chapter goes on to advise women who are in a relationship where the man has "total dominance," that they need to turn the tables: "You have something that we do not. You are built to be a critical thinker, a strategic planner, and you are capable of doing whatever you want without the distraction of "Ego." We, as fickle creatures of the world, need HER. We need her to dominate, but

not let us know she is dominating. We need her to understand what drives us to do something, allow us to pick up the pieces, and have what looks like a balance. Who is SHE? She is the only creature capable of stabilizing the one creation that thrives off of Ego, testosterone, and sex. This creation has a false sense of has a false sense of reality. This creation is MAN." (A-66).

Chapter Two, entitled "Motive," discusses differences between men's and women's motives for seeking love and marriage. (A-67). Chapter Three, entitled "His Weakness," discusses the profound influence a woman's sexual attractiveness can have on a man's actions, using examples from the author's personal life to illustrate this thesis. (A-68-69). Chapter Four, entitled "His Power," discusses the ways men seek to maintain power over women, but concludes that, in the case of a single man: "[t]he ultimate goal *** is to do all he can to eventually be able to commit and submit to a woman's power." It suggests that a married man should lie to his wife about how she looks, because "the lies are to maintain peace, keep the love flowing, therefore holding power, even if it is only for a short amount of time." (A-70). Chapter Five, entitled "Her Dominance of Man's Power," contains advice as to how woman can use men's weaknesses to their own advantage: "Considering a man's keen senses to material detail, a women can do a variety of things to obtain whatever they may need, whether material, sexual, or mental. The point here is not to be sexually explicit to woo a guy, but to use your entire soul to overthrow the male species." (A-71).  Chapter Six, "The Dip" discusses pre-marital sex, sexual differences between different races of women,

–5–

and other topics. (A-72-73). Chapter Seven, "A-E." discusses different kinds of relationships which men can have with women before marriage. (A-75-77). Chapter Eight, "Solid," returns to the major theme, advising married men and woman about how to treat each other, and, in particular, how to remain married. (A-78-79).

Not one word of "It's Her Fault," contains any personal grievance relating to Bryan Craig's employment.

On September 14, 2012, defendant Donna Leak, Superintendent of Rich Township High School District 227 sent Bryan Craig a letter. (A-16). The letter stated that District 227's administration had "received concerns from members of the School District community regarding the publication of your book, 'It's Her Fault.' An investigation of the concerns has been conducted and a determination has been reached that you have violated School District policies, procedures and core objectives. A copy of the Charges and a Bill of Particulars are attached to this correspondence. It is my opinion that the Charges provide good cause for a recommendation to terminate your employment as a Guidance Counselor at the School District." Attached to the letter was a copy of a document entitled "Charges of Misconduct" and a "Bill of Particulars." (A-16).   The document entitled "Charges of Misconduct" contains 23 numbered points. The first 18 points of the "Charges" are all directly based upon the publication of "It's Her Fault." Points 19, 20, 21, and 22 reference past conduct by plaintiff Craig, but points 19, 20, 21, and 23 all explicitly reference the publication of "It's Her Fault," as the reason for dismissal. (A-16). The "Bill of Particulars" relating to the "Charges,"

contains 33 factual allegations, many of which duplicate the charges, and all of which relate to Craig's publication of "It's Her Fault." (A-16-17).

On September 18, defendant Board of Education of Rich Township High School, District 227, issued a Resolution, signed by defendant Betty J. Owens as President of defendant Board and by the defendant Board members, adopting the Charges and Bill of Particulars, finding cause for the dismissal of Bryan Craig, and authorizing the President and Secretary of the Board to prepare and serve "such additional notice and documentation as may be necessary to effect the dismissal of Bryan Craig as a teacher in this School District." (A-17).

## SUMMARY OF ARGUMENT

The district court erred by granting the defendants' motion to dismiss the complaint for failure to state a claim. Although the district court correctly identified the proper general standard for judging the motion, the district court misconstrued the proper standard for assessing plaintiff's first amendment claim. Since plaintiff's self-published book was clearly unrelated to his status as a public employee, the district court was in error when it required him to allege that it touched on a matter of public concern. In fact, under relevant United States Supreme Court precedent, he had a right to publish the book and not suffer discharge for it unless a justification for prohibiting the publication amounting to something more than mere speculation was shown. In addition, the book did touch upon matters of public concern, and the district court's dislike of the book and the opinions it expressed did not justify granting the motion to dismiss.

**ARGUMENT**

**THE DISTRICT COURT ERRED BY FINDING THAT BRYAN CRAIG, A PUBLIC EMPLOYEE, HAD NO FIRST AMENDMENT RIGHT TO PUBLISH A BOOK ON A MATTER OF PUBLIC CONCERN WHICH WAS UNRELATED TO HIS EMPLOYMENT**

The district court granted defendants' motion to dismiss plainitif's complaint for failure to state a claim under Federal Rule of Civil Procedure, Rule 12(b)(6). (A-3-12). The district court was wrong.

This court reviews a district court's grant of a 12(b)(6) motion de novo. *U.S. v. Lewis*; 411 F.3d 838, 841-42 (7th Cir. 2005); *Olson v. Wexford Clearing Servs. Corp.*, 397 F.3d 488, 490 (7th Cir. 2005). And as the district court correctly noted, the plaintiff's burden of persuasion with respect to a motion to dismiss is "not high." (A-5), quoting *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010), in turn quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1973 (2009). All well-pleaded allegations are to be taken as true and draw all reasonable inferences are to be drawn in the plaintiff's favor. *Opp v. Office of State's Attorney of Cook County*, 630 F.3d 616, 619 (7th Cir. 2010). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must only "contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Bonte*, 624 F.3d at 463, Iqbal, 556 U.S. at 678.

Having correctly stated the general test for evaluating whether a 12(b)(6) motion to dismiss, the district court then made a fundamental error in determining whether plaintiff had adequately stated a first amendment claim."[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions ... for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) (citing *Crawford–El v. Britton*, 523 U.S. 574, 592, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)) (citations omitted). In particular, it has long been established that "public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006); see, e.g., *Pickering v. Bd. of Educ. of Twp. High Sch. Dist*. 205, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). "[A] citizen who works for the government is nonetheless a citizen. The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens. So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti*, 547 U.S. at 419, 126 S.Ct. 1951 (citations omitted).

−10−

As the district court correctly stated, the ultimate issue in determining whether a public employee plaintiff has proved a Section 1983 claim for retaliation requires a three step analysis. First, the court must determine whether the plaintiff's speech was constitutionally protected. If so, then the plaintiff must prove that the defendant's actions were motivated by the plaintiff's constitutionally protected speech. Finally, if the plaintiff can demonstrate that his constitutionally protected speech was a substantial or motivating factor in the defendant's actions, the defendant is given the opportunity to demonstrate that it would have taken the same action in the absence of the plaintiff's exercise of his rights under the First Amendment. *Kokkinis v. Ivkovich*, 185 F.3d 840, 843 (7th Cir. 1999)(affirming grant of summary judgment in favor of defendants were police officer criticized his superior on a television program).

The district court found that plaintiff's complaint --- even when considered in connection with the text of the book and the charges and bill of particulars -- did not satisfy the plausibility test because his speech was not, under the first step in the analysis, constitutionally protected. The court noted that where, as here, a plaintiff is speaking as a citizen, the (A-7- 11), constitutional protection depends upon a showing that the plaintiff's speech addressed a matter of public concern, see *Connick v. Myers*, 461 U.S. 138, 147-48, 103 S.Ct. 1684 (1983), and, if so, whether the interests of the plaintiff outweigh the employer's interest in the efficiency of the public services it performs. *Pickering v. Board of Educ. of Township High Sch. Dist*. 205, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Beginning and ending with the first, or

−11−

*Connick*, prong of the "*Connick-Pickering*" test, the district court found that Bryan Craig's book did not address a matter of public concern. (A-7-11). This conclusion was dead wrong

Without citing specifics, the district court summarily concluded that the book did not address matters of public concern because, in its view, the book was little more than a "lurid account of plaintiff's own sexual preferences and exploits." (A-9). While acknowledging that the first two chapters of the book "superficially" discuss the balance of power between men and women in relationships, the district court went on to conclude that plaintiff's narration was "focused on his own attraction to women." (A-9). The district court apparently found revolting the plaintiff's conclusion that a stripper's "'mindset is in the right place in order to meet the true potential of the point of this book," as well as his advice that women should "'enter the wonderful world of [sexual] submissiveness.'" (A-9). The district court was also disturbed by the plaintiff's discussion of the vaginas of women of different races. (A-9). Finally, the district court believed, falsely and without citing or quoting any passage in the book, that plaintiff was advising men to "cheat and engage in sexual exploits." (A-9).

While, it is true that a court considering whether an employee's speech "addresses a matter of public concern," should consider the "precise content, form, and context of a given statement," *Connick*, 461 U.S. at 146, 103 S. Ct. at 1689. .this does not mean that a court is free to deny speech constitutional protection merely because it

disagrees with the speaker. "The inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern." *Rankin v. McPherson*, 483 U.S. 378, 387, 107 S.Ct. 2891, 2898 - 99 (1987)(holding that employee enjoyed constitutional protection for remark made in workplace commenting on the attempt to assassinate President Reagan and opining that he should be assassinated because of his policies). Moreover, the district court's denial of speech protection to plaintiff's book on the grounds that it expresses ideas which the court personally finds distasteful contravenes the well-established principle that "debate on public issues should be uninhibited, robust, and wide-open." *Rankin*, 483 U.S. at 387, 107 S. Ct. at 2898-9, quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964). If the district court's ruling were to stand the new principle would be: debate on public issues should be censored, meek, and politically correct.

The district court also failed to consider other factors bearing upon the "precise content, form and context" of plaintiff's book which strongly establish that it was entitled to constitutional protection. The United States Supreme Court has made clear that where an public employee's speech is utterly unrelated to his status as a public employee, restrictions upon that speech are subject to a heightened level of scrutiny.

In *U.S. v. National Treasury Employees Union*, 513 U.S. 454, 457, 115 S.Ct. 1003, 1008 (1995) the court struck down a law which prohibited federal employees

from accepting any compensation for making speeches or writing articles, even when neither the subject of the speech or article nor the person or group paying for it had any connection with the employee's official duties. The law would have prohibited such activities as lectures on the Quaker religion and black history, as well as articles reviewing dance performances and writing about the environment. *NTEU*, 513 U.S. at 461-62, 115 S. Ct. at 1010-11. Without considering whether any of these activities would have implicated matters of "public concern," the court stated as follows:

"Federal employees who write for publication in their spare time have made significant contributions to the marketplace of ideas. They include literary giants like Nathaniel Hawthorne and Herman Melville, who were employed by the Customs Service; Walt Whitman, who worked for the Departments of Justice and Interior; and Bret Harte, an employee of the Mint. Respondents have yet to make comparable contributions to American culture, but they share with these great artists important characteristics that are relevant to the issue we confront."

*NTEU*, 513 U.S. 454, 464-65, 115 S.Ct. 1003, 1012.

The court noted that as to the speech of these employees:

"They seek compensation for their expressive activities in their capacity as citizens, not as Government employees. They claim their employment status has no more bearing on the quality or market value of their literary output than it did on that of Hawthorne or Melville. With few exceptions, the content of respondents' messages has nothing to do with their jobs and does not even arguably have any adverse impact on the efficiency of the offices in which they work. They do not address audiences composed of co-workers or supervisors; instead, they write or speak for segments of the general public. Neither the character of the authors, the subject matter of their expression, the effect of the content of their expression on their official duties, nor the kind of audiences they address has any relevance to their employment."

513 U.S. at 465, 115 S.Ct. 1003, 1012.

The Court went on to distinguish cases such as *Pickering* which held that the state may impose "restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large." In such cases, the court noted, private speech that involved nothing more than a "complaint about a change in the employee's duties may give rise to discipline without imposing any special burden of justification on the government employer." 513 U.S. at 466, 115 S. Ct. at 1012-13. Where expressive activities fall within "the protected category of citizen comment on matters of public concern rather than employee comment on matters related to personal status in the workplace" the first amendment does apply, and an employee cannot be discharged without a very substantial showing. The court noted that the expressive activities involved in *NTEU* were addressed to a public audience and involved content largely unrelated to government employment. 513 U.S. at 466, 115 S. Ct. at 1013. In that instance, where the topics are unrelated to government employment, a government proscription must be based on a justification "for stronger than mere speculation." 513 U.S. at 465, 115 S. Ct. at 1003.

Plaintiff's speech in this case was clearly more similar to the proscribed speech outlined in *NTEU* than a comment on matters related to personal status in the workplace. Plaintiff's book does not even mention the name of the school at which he worked. There are no anecdotes or descriptions based upon his work at the school. The book does not criticize school personnel or even allude to any particular student or teacher, apart from his fellow employee, Kylie Gregor, who wrote the introduction. The

book was addressed to a public audience and there is nothing in the complaint to indicate it was distributed within the school or to students of the school.

The district court. however, apparently believed that the *Pickering*'s public/private distinction allowed it to "delve deeply" (A-7) into the value and desirability of plaintiff's expressed beliefs. Such an inquiry may be appropriate in cases where the court needs to determine whether an employee is making a protected statement as to his employer's policies or is merely pursuing a private grievance. See, e.g., *Pickering*, 391 U.S. at 564, 88 S.Ct. 1731 (teacher's letter to local newspaper criticizing school board funding policies); *Perry v. Sindermann*, 408 U.S. 593, 595, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (state junior college professor's criticism of Board of Regents' refusal to elevate college to four-year status); *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 282, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (teacher's criticism of school policy on teacher dress and appearance); *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 413, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) (teacher's complaints about school board policies and practices perceived to be racially discriminatory). Many of the cases relied upon the district court in fact involved expressions of personal, work-related grievances. See, e.g. *Kokkinis v. Ivkovich*, 185 F.3d 840, 844 (7th Cir. 1999)(employee's criticisms of employer during news broadcast about sexual discrimination in the workplace were motivated by his own personal unhappiness with employer, not to advance public interest and were therefore not protected).

−16−

This Court has in fact recognized, and stated in no uncertain terms, that issues of public concern means a public dialogue on matters of interest to the public, regardless of a court's subjective perception of the value of a particular person's speech:

"when the Supreme Court in its cases establishing and bounding the rights of public employees to exercise free speech limited those rights to speech on matters of "public concern," they did not mean matters of transcendent importance, such as the origins of the universe or the merits of constitutional monarchy; they meant matters in which the public might be interested, as distinct from wholly personal grievances-which whether or not protected by the First Amendment are too remote from its central concerns to justify judicial interference with the employment relation *** and casual chit-chat, which is not protected by the First Amendment al. When Dishnow spilled the beans to the media about the school board's violation of state law, or wrote articles for a local newspaper on such topics as the sharing of household tasks by a working couple, he was participating in a public dialogue on matters of interest to the public, and no more was required to place his speech, prima facie, within the protection of the First Amendment. That the public was not large, that the issues were not of global significance, and that Dishnow's participation was not (we mean no disrespect) vital to the survival of Western civilization did not place his speech outside the orbit of protection."

*Dishnow v. School Dist. of Rib Lake*, 77 F.3d 194, 197 (7th Cir. 1996)(Citations omitted). Accord, *Navab-Safavi v. Broadcasting Bd. of Governors*, 650 F. Supp. 2d 40, 55 -56 (D.D.C. 2009)(contractor's publication of song with political content was constitutionally protected).

Here, similarly, plaintiff's discussion of the relationships between men and women, his past sexual experiences, marital relations, as well as other matters, while not rising to the level of the "origins of the universe or the merits of constitutional monarchy," are similarly entitled to constitutional protection.

–17–

Lastly, the district court relied heavily upon the case of *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 125 S.Ct. 521 (2004). (A-10-11). This reliance was sadly misplaced. Roe involved a police officer who was fired for selling various items on the internet, including a video showing him in police uniform, issuing a traffic ticket, taking off the uniform, and masturbating. 543 U.S. at 79, 125 S.Ct. at 523.

On these facts, the United States Supreme Court had little difficulty in concluding that the speech involved was unprotected either under *Pickering* or *NTEU*. Under *NTEU*, " far from confining his activities to speech unrelated to his employment," Roe took deliberate steps to link his videos to his police work, by wearing a police uniform, referring to law enforcement on his website, and parodying the performance of police duties. 543 U.S. at 81, 125 S. Ct. at 524. Under these circumstances, Roe had no valid claim that his activities were unrelated to his employment.

Here, in contrast, the "linking" of plaintiff's book to his job is confined to one reference to his current position, without a mention of his school's name and a reference in a series of multiple dedications to his students. Surely the decision in *NTEU* would have been no different if the lecturer on Quakerism identified himself as a postal worker, the lecturer on black history identified himself as a aerospace engineer, the dancer reviewer identified himself as a microbiologist, or the environmental writer identified himself as a tax examiner.

The Court in *NTEU* also rejected, and for good reason, Roe's claim that his speech related to a matter of public concern under *Connick* and *Pickering*. Roe's masturbation obviously "did not touch on a subject of general interest and of value and concern to the public at the time of publication." 543 U.S. at 84, 125 S. Ct. at 526. Here, in contrast, no matter what one thinks of plaintiff's book, the topic of relationships between men and women does touch on a subject of general interest and concern.

The district court's decision should therefore be reversed.

## CONCLUSION

For the reasons given,    the judgment below should be reversed, and the case remanded for further proceedings.


Respectfully submitted,



BRYAN CRAIG


By: _____

Stephen L. Richards
651 W. Washington Suite 205
Chicago, IL 60661
773-817-6927


−19−

CERTIFICATE OF TYPE VOLUME

I, Stephen L. Richards, attorney of record for appellant Bryan Craig, certifies that the foregoing brief complies with the type-volume limitation of Rule 32(a)(7) of the Federal Rules of Appellate Procedure in that the brief contains 5,214 words as defined by that rule. In making this certification, counsel relies upon the word count of the word-processing system used to prepare the brief.

/s/ Stephen L. Richards


Stephen L. Richards

−20−

# REQUIRED SHORT APPENDIX

TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………...……..A-i

JUDGMENT BELOW………………………………………………………A-1

MEMORANDUM OPINION AND ORDER ……….……………………………A-3

STATEMENT UNDER CIRCUIT COURT RULE 30(D)………..……………....A-13

AO 450 (Rev. 01/09)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Northern District of Illinois

|  |  |  |
|---|---|---|
| BRYAN CRAIG | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.    12 C 7581 |
| RICH TOWNSHIP HIGH SCHOOL DIST., et al. | ) | |
| *Defendant* | ) | |

## AMENDED JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

❏ the plaintiff *(name)* _____ recover from the defendant *(name)* _____ the amount of _____ dollars ($_____), which includes prejudgment interest at the rate of _____%, plus postjudgment interest at the rate of _____%, along with costs.

❏ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____ recover costs from the plaintiff *(name)* _____ .

X  other:   The Court grants defendants' motion for summary judgment.
_____ .

This action was *(check one)*:

❏ tried by a jury with Judge _____ presiding, and the jury has rendered a verdict.

❏ tried by Judge _____ without a jury and the above decision was reached.

X  decided by Judge        Elaine E. Bucklo        on a motion for   summary judgment.
_____ .

Date:   Feb 19, 2013 _____

Thomas G. Bruton, Clerk of Court

Ms. Jacquelyn H. Collier
_____
Deputy Clerk

A–1

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 5.1.1
### Eastern Division

Bryan Craig

                                  Plaintiff,

v.                                        Case No.: 1:12−cv−07581
                                          Honorable Elaine E. Bucklo

Rich Township High School District 227, et al.

                                  Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, February 19, 2013:

      MINUTE entry before Honorable Elaine E. Bucklo: Defendants' Motion to Dismiss for Failure to State a Claim [15] is granted and plaintiff's complaint is dismissed with prejudice. Enter Memorandum Opinion and Order. All pending dates and motions are terminated as moot. Civil case terminated. Mailed notice (jdh)

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

A−2

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 5.1.1
### Eastern Division

Bryan Craig

                                        Plaintiff,

v.                                                      Case No.: 1:12−cv−07581
                                                        Honorable Elaine E. Bucklo

Rich Township High School District 227, et al.

                                        Defendant.
_____


## NOTIFICATION OF DOCKET ENTRY


This docket entry was made by the Clerk on Monday, March 11, 2013:


        MINUTE entry before Honorable Elaine E. Bucklo: Pursuant to the Seventh
Circuit's Order in 13−1392 Bryan Craig v. Rich Township High School, et al., I find that
the judgment entered in this case should be amended to reflect my actual disposition of the
case, i.e., that I granted defendants' motion to dismiss. Mailed notice (jdh)


**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at ***www.ilnd.uscourts.gov***.


A−2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRYAN CRAIG | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICH TOWNSHIP HIGH SCHOOL DISTRICT | ) | No. 12 C 7581 |
| 227; BOARD OF EDUCATION OF RICH | ) | |
| TOWNSHIP HIGH SCHOOL DISTRICT 227; | ) | |
| DONNA LEAK, in her capacity as | ) | |
| Superintendent of Rich Township High | ) | |
| School District 227; BETTY J. OWENS, | | |
| in her capacity as President, Board | | |
| of Education of Rich Township High | | |
| School District 227; SHEILA FRIDAY, | | |
| CHERYL COLEMAN, DAVID MORGAN, | | |
| EMMANUEL IMOUKHUEDE, AND SONYA | | |
| NORWOOD, in their capacities as | | |
| Board Members, Board of Education of | | |
| Rich Township High School District | | |
| 227, | | |
| | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bryan Craig filed this lawsuit under 42 U.S.C. § 1983 against defendants Rich Township High School, District 227; the Board of Education of Rich Township High School, District 227; Dr. Donna Leak, in her official capacity as Superintendent of Rich Township High School, District 227; Betty J. Owens, in her official capacity as President of the Board of Education of Rich Township High School, District 227; and Sheila Friday, Cheryl Coleman, David Morgan, Emmanuel Imoukhuede, and Sonya Norwood, in their official

capacities as Board Members of the Board of Education of Rich Township High School, District 227. Plaintiff alleges, in his one-count complaint, that defendants violated his constitutional rights under the First and Fourteenth Amendments when they fired him after he self-published the book "It's Her Fault." Defendants move to dismiss plaintiff's complaint in its entirety. For the reasons given below, defendants' motion is granted.

I.

According to plaintiff's complaint, plaintiff was employed as a tenured guidance counselor by Rich Township High School, District 227 ("the District") and the Board of Education of Rich Township High School, District 227 ("the Board"). In July 2012, he self-published a book entitled "It's Her Fault." Plaintiff describes the book as a "self-help book" about relationships between men and women. In September 2012, defendant Donna Leak sent plaintiff a letter indicating that there had been an investigation into concerns raised about the book's publication and including a copy of "charges" and "bill of particulars" brought against plaintiff. In defendant Leak's opinion, the charges provided good cause for a recommendation for plaintiff's dismissal. Indeed, on September 18, 2012, the Board issued a resolution, signed by the defendant Board members, to effectuate plaintiff's dismissal.

Instead of pursuing his right to a review of the Board's decision under state law, plaintiff filed this lawsuit. He claims

that defendants have restrained his right to free speech and
retaliated against him in violation of the First and Fourteenth
Amendments.

## II.

For purposes of deciding a motion to dismiss, I accept all
well-pleaded allegations as true and draw all reasonable inferences
in plaintiff's favor. *Opp v. Office of State's Attorney of Cook
County*, 630 F.3d 616, 619 (7th Cir. 2010) (citations omitted). The
purpose of a motion to dismiss is to test the sufficiency of the
complaint, not to decide the merits. *Gibson v. City of Chicago*,
910 F.2d 1510, 1520 (7th Cir. 1990). To state a claim upon which
relief can be granted, a complaint must contain a "short and plain
statement of the claim showing that the pleader is entitled to
relief." Fed. R. Civ. P. 8(a)(2). While "the bar to survive a
motion to dismiss is not high, the complaint must 'contain
sufficient factual matter, accepted as true, to state a claim to
relief that is plausible on its face.'" *Bonte v. U.S. Bank, N.A.*,
624 F.3d 461, 463 (7th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556
U.S. 662, 678, 129 S.Ct. 1973 (2009)).

## III.

Defendants argue that plaintiff has not stated a First
Amendment claim. Evaluating plaintiff's claim requires a three-
step analysis:

A-5

> First, the court must determine whether the plaintiff's
> speech was constitutionally protected.  If so, then the
> plaintiff must prove that the defendant's actions were
> motivated by the plaintiff's constitutionally protected
> speech.  Finally, if the plaintiff can demonstrate that
> his constitutionally protected speech was a substantial
> or motivating factor in the defendant's actions, the
> defendant is given the opportunity to demonstrate that it
> would have taken the same action in the absence of the
> plaintiff's exercise of his rights under the First
> Amendment.

*Kokkinis v. Ivkovich*, 185 F.3d 840, 843 (7th Cir. 1999) (citations
omitted).

The first step in this analysis is a question of law for the
court.  *Id.* (citations omitted).  If the plaintiff is speaking as
a citizen, as is the case here, *see Bivens v. Trent*, 591 F.3d 555,
560 (7th Cir. 2010) (discussing *Garcetti v. Ceballos*, 547 U.S. 410,
126 S.Ct. 1951 (2006)), this first step involves a two-part test
("the *Connick-Pickering* test").  *Kokkinis*, 185 F.3d at 843.

> First, the court must determine whether the plaintiff's
> speech addressed a matter of public concern. *See Connick*
> [*v. Myers*, 461 U.S. 138, 147-48, 103 S.Ct. 1684 (1983)].
> If this hurdle is cleared, the court must then apply the
> *Pickering* balancing test to determine whether "the

interests of the [plaintiff], as a citizen, in commenting
upon matters of public concern" outweigh "the interest of
the State, as an employer, in promoting the efficiency of
the public services it performs through its employees."
*Pickering v. Board of Educ. of Township High Sch. Dist.
205*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811
(1968).

*Kokkinis*, 185 F.3d at 843-44. Even if the speech in question is on
a topic of public *interest*, determining whether speech addresses a
matter of public *concern* requires courts to "delve deeper into the
precise content, form, and context of speech that admittedly may be
of some interest to the public." *Id.* at 844 (quoting *Cliff v. Bd.
of Sch. Comm'rs of Indianapolis*, 42 F.3d 403, 410 (7th Cir. 1994)).
"[I]t is necessary to 'look at the point of the speech in question:
was it the employee's point to bring wrongdoing to light? Or to
raise other issues of public concern, because they are of public
concern? Or was the point to further some purely private interest?"
*Id.* (quoting *Callaway v. Hafeman*, 832 F.2d 414, 417 (7th Cir.
1987)).

My analysis begins and ends with the first prong of the
*Connick-Pickering* test. Plaintiff's complaint, alone, is
insufficient to survive a motion to dismiss. The bare legal
conclusion that the book is on a matter of public concern is not
enough to state a First Amendment claim. Further, the few facts

pleaded in the complaint (that the book is a "self-help" book on relationships between men and women) are not sufficient to plausibly establish that the book is on a matter of public concern. That plaintiff self-published the book, suggests that the book, though public, may not be a matter "in which the public might be interested." *Dishnow v. Sch. Dist. of Rib Lake*, 77 F.3d 197 (1996).   Moreover, plaintiff misunderstands his burden in establishing that "It's Her Fault" is on a matter of public concern. Whether speech is on a matter of public concern is a matter of law and courts can and do decide this issue on motions to dismiss. *See Khuans v. Sch. Dist. 110*, 123 F.3d 1010, 1016-17 (7th Cir. 1997).  It is not enough for plaintiff to merely assert that because the book addresses relationships between adult men and women, it is a matter of public concern.  Such a statement is too vague to state a claim.  "[S]peaking up on a topic that may be deemed one of public importance does not automatically mean the employee's statements address a matter of public concern as that term is employed in *Connick*." *Kokkinis*, 185 F.3d at 844 (citation omitted).  Similarly, the mere fact that plaintiff has self-published his book, making it available to the public and purportedly part of some public discourse, is not enough to satisfy the first prong of the *Connick-Pickering* test.  *See id.* (finding that the fact the plaintiff's statements "were made in the course of a news program covering sex discrimination" was not enough,

6

standing alone, to establish that the speech was on a matter of public concern).

However, that plaintiff's complaint does not, on its face, satisfy the plausibility test does not end the analysis because, in response to defendants' motion, plaintiff has attached the text of the book along with the charges and bill of particulars adopted by the Board.  These reveal that though plaintiff describes "It's Her Fault" as a "self-help" book on relationships, it is actually little more than a lurid account of plaintiff's own sexual preferences and exploits.  The first two chapters at least superficially discuss the balance of power between men and women in relationships, but by the third chapter plaintiff's narration is focused on his own attraction to women, from ogling a "sexy young lady" at the mall to working after-hours at a strip club, where he has learned that a stripper's "mindset is in the right place in order to meet the true potential of the point of this book." (*See* "It's Her Fault," Dkt. No. 19-1, at 8).  Plaintiff then goes on to explain "PIMP 101," to urge women to "enter the wonderful world of submissiveness," to describe in detail the vaginas of women of different races, and to advise men to cheat and engage in sexual exploits. (*See id., passim*).  Plaintiff has attempted to lend some value and validity to his book based on, in relevant part, his credentials as a high school girls basketball coach and a high school guidance counselor (for defendants) who is "responsible for

roughly 425 high school students a year" (*see* "It's Her Fault,"
Dkt. No. 19-1, at 4), but his credentials and superficial
discussions of relationships between men and women do not convert
his book into speech on a matter of public concern.

Simply because plaintiff's book touches on a matter of public
interest (relationships between men and women) does not mean that
it addresses a matter of public concern such that it satisfies the
*Connick-Pickering* test. *See Kokkinis*, 185 F.3d at 844. The
Supreme Court has stated that "public concern is something that is
a subject of legitimate news interest; that is, a subject of
general interest and of value and concern to the public at the time
of publication." *City of San Diego, California v. Roe*, 543 U.S.
77, 83-84, 125 S.Ct. 521 (2004). The Court further suggested that
in evaluating the employee's purpose, it is important to consider
whether the employee "discussed subjects that could reasonably be
expected to be of interest to persons seeking to develop informed
opinions about the manner in which" the government agency for which
he works functions or operates. *Id.* at 84 (quoting *Connick*, 461
U.S. at 163, 103 S.Ct. 1684 (Brennan, J., dissenting)). The Court
had no difficulty in *City of San Diego* determining that the
plaintiff police officer's speech (a sexually explicit video of him
stripping off a police uniform and masturbating, which he sold on
eBay) did not qualify as a matter of public concern. *Id.* Though
plaintiff here attempts to dress his book in more noble clothing,

I, too, conclude that "It's Her Fault" does not meet the threshold test of the *Connick-Pickering* analysis.

Moreover, like the plaintiff in *City of San Diego*, plaintiff here has exploited his position as a high school guidance counselor and there is no question that the speech is "detrimental to the mission and functions of the employer," including policies regarding discrimination based on gender or sex. *See id.* at 84. As a result, plaintiff cannot establish that his book, "It's Her Fault," is a matter of public concern, and his First Amendment claim must be dismissed.

Defendants also argue that plaintiff has failed to state a Fourteenth Amendment liberty interest claim. In his complaint, plaintiff purports to bring a due process claim, alleging that defendants have deprived him of his liberty interest in pursuing his profession and maintaining his professional reputation. (Compl., at ¶ 36). Defendants contend that plaintiff has failed to state such a claim in part because he has not alleged that the defendants publicly disclosed stigmatizing information about plaintiff. Not only has plaintiff failed to respond to this argument, but defendants' argument has merit. "To prove a deprivation of [a] liberty interest, a plaintiff must establish that the defendant publicly disclosed stigmatizing information that caused the plaintiff to suffer a tangible loss of other employment opportunities." *RJB Properties, Inc. v. Bd. of Educ. of City of*

*Chicago*, 468 F.3d 1005, 1011 (7th Cir. 2006).  By failing to plead any publication on the part of defendants, plaintiff has not stated a claim for deprivation of his liberty interest without due process.

IV.

For the foregoing reasons, defendants' motion to dismiss is granted and plaintiff's complaint is dismissed with prejudice.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: February 19, 2013

A-12

STATEMENT UNDER CIRCUIT RULE 30(D)

I, Stephen L. Richards, attorney of record for appellant Bryan Craig certifies that this Required
Short Appendix complies with the requirements of Circuit Rule 30(a) and that all documents
required to be included by this rule have been included. The documents required by Circuit Rule
30(b) are included in the Separate Appendix.

/s/ Stephen L. Richards

Stephen L. Richards

A-13